UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL NORBERTO CUELLAR GOMEZ,<br><br>                                          Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A., and DOES 1 to 100, inclusive,<br><br>                                          Defendants. | Case No.:  3:22-cv-01773-JAH-DEB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE AS MOOT [ECF No. 21-2]; and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF No. 21].** |

## <u>INTRODUCTION</u>

Pending before the Court is Defendant JP Morgan Chase Bank, N.A.'s ("Defendant" or "Chase") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC"), which was filed on May 30, 2024.  ECF No. 21 ("Motion" or "Mot.").  Plaintiff Emanuel Norberto Cuellar Gomez ("Plaintiff") filed an Opposition on June 28, 2024, and Defendant filed a Reply on July 10, 2024.  ECF No. 24 ("Opp'n"); ECF No. 25 ("Reply").  Also before the Court is Defendant's Request for Judicial Notice.  ECF No. 21-2 ("RJN").  The motions are decided on the parties' briefs without oral argument pursuant to Civil Local Rule

7.1.d.1.  After a thorough review of the record, and for the reasons set forth below, the Court **DENIES** Defendant's request for judicial notice and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

## BACKGROUND

On March 2, 2023, Plaintiff filed his First Amended Complaint ("FAC") against Defendant alleging violations of the Electronic Fund Transfer Act ("EFTA"), California Unfair Competition Law ("UCL"), breach of contract, and negligence.  *See* ECF No. 9. Upon Defendant's motion to dismiss Plaintiff's FAC, this Court granted Defendant's motion with respect to all of Plaintiff's causes of action, dismissing Plaintiff's EFTA claims with prejudice and allowing Plaintiff to file an amended complaint regarding the remaining causes of action.  ECF No. 15.  On April 16, 2024, Plaintiff filed his Second Amended Complaint ("SAC"), the operative complaint in this matter, alleging breach of contract and violation of the EFTA.  ECF No. 18 ("SAC" or "Compl.").  Though Plaintiff alleges many of the same allegations as in his FAC, the Court will summarize the pertinent facts for clarity of the record.

Like Plaintiff's FAC, Plaintiff's SAC[1] contains allegations that Defendant refuses to reimburse him for at least $88,100 allegedly stolen from his Chase bank account as a result of identity theft.  *Id.* ¶ 15.  According to Plaintiff, he opened a Chase bank account in November 2010 at which point he entered into a Deposit Account Agreement ("DAA") with Chase.  *Id.* ¶¶ 6-8.[2]  Plaintiff originally received his Chase bank statements by mail at a San Diego address located at "Charmant Drive," but after selling his house in San Diego, he changed his mailing address to one in Tijuana, Baja California, Mexico.  *Id.* ¶¶ 9-10.  Plaintiff alleges that Chase started mailing Plaintiff his bank statements to his new Tijuana

---

[1] The following is a recitation of pleaded facts for the purposes of this Order and not to be construed as findings of fact by this Court.

[2] The Court notes that though Plaintiff cites to Exhibit 1 and suggests that it is incorporated by reference, Plaintiff failed to attach the DAA to the SAC.  *Id.* ¶ 8.

address, but that in March 2021, an unidentified individual—who Plaintiff claims stole his identity—changed Plaintiff's mailing address with Chase to one on "Sweetwater Road" in National City, California.  *Id*. ¶¶ 11-12.  Plaintiff claims he was unaware of the address change on his account and did not authorize this activity.  *Id*. ¶ 13.  Plaintiff alleges that the unidentified individual opened an online banking account with Chase and at that time Plaintiff's account balance was approximately $89,000.  *Id*. ¶ 14.

According to Plaintiff, from May 10, 2021, through June 21, 2021, the unidentified individual made numerous unauthorized ATM withdrawals, Zelle payments, and card purchases from Plaintiff's Chase bank account totaling at least $88,100.  *Id*. ¶ 15.  Plaintiff alleges he did not discover these unauthorized transactions until nearly a year later, on May 19, 2022, when a check he wrote bounced.  *Id*. ¶ 17.  Six days later, on May 25, 2022, upon discovering the theft and unauthorized transactions, Plaintiff reported a fraud claim to Chase seeking to have the money refunded.  *Id*. ¶ 18.  Shortly thereafter, in June 2022, Chase denied Plaintiff's fraud claim, which Plaintiff claims breached specific contractual provisions included in the DAA.  *Id*. ¶ 16.

## DISCUSSION

### I.    Request for Judicial Notice

As an initial matter, Defendant requests the Court take judicial notice of the DAA (RJN, "Exhibit A").  RJN at 2.[3]  Defendant explains that though Plaintiff purports to attach the DAA to his SAC, no document was attached.  *Id*.  Thus, to aid the Court in its review, Defendant has provided the DAA contending it is central to Plaintiff's claims, not subject to reasonable dispute, and therefore subject to judicial notice.  *Id*.

Generally, a district court may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

---

[3] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

However, there are two exceptions to this rule: incorporation-by-reference and judicial notice under Federal Rule of Evidence 201. *Id*. Under incorporation-by-reference, a document that is not attached to the complaint itself may be incorporated by reference into the complaint if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja*, 899 F.3d at 1002 ("incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself").

Here, Plaintiff's SAC refers extensively to the DAA and the DAA forms the basis of Plaintiff's breach of contract claim. SAC ¶¶ 25-34. Indeed, Plaintiff cites to and quotes specific provisions of the DAA in arguing that Defendant allegedly breached the terms of the DAA by "failing to comply with its written promises and policies[.]" SAC ¶ 35. As a result, the Court considers the DAA to be incorporated by reference into Plaintiff's SAC. *See id*. Because the Court considers the DAA under the incorporation-by-reference doctrine, the Court **DENIES** Defendant's request for judicial notice as moot.

## II. Motion to Dismiss

A motion to dismiss can be granted for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). In evaluating a Rule 12(b)(6) motion to dismiss, the Court accepts as true the facts alleged in the complaint and draws all inferences in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. However, the Court is not bound to accept as true any legal conclusions presented as allegations of fact. *Id*. While

recitation of the elements of a cause of action is not sufficient, a well-pleaded complaint may proceed even if the likelihood of recovery is remote. *Twombly*, 550 U.S. at 555-56.

Here, Defendant argues that both Plaintiff's EFTA claim and Plaintiff's breach of contract claim fail. With respect to Plaintiff's EFTA claim, Defendant argues that this claim fails at the outset given that this Court previously dismissed Plaintiff's FAC and denied Plaintiff's EFTA claim with prejudice. Mot. at 9. In his Opposition, Plaintiff concedes that the EFTA cause of action should be stricken as it has already been dismissed by this Court with prejudice. Opp'n at 1. As a result, the Court **STRIKES** Plaintiff's EFTA claim from Plaintiff's SAC and will only address Plaintiff's breach of contract cause of action on the merits.

### A. Breach of Contract

According to the SAC, Plaintiff and Defendant entered into the DAA at the time Plaintiff opened a banking account with Chase in November 2010. SAC ¶¶ 6, 8. Plaintiff claims that Defendant failed to abide by certain terms of the DAA and points to nine separate provisions that he alleges Defendant breached. SAC ¶¶ 25-35. Though Plaintiff paraphrases certain provisions, for purposes of completeness the Court has included the exact contract language Plaintiff claims Defendant breached, which includes the following:

- "Zero Liability: We'll reimburse you for any unauthorized card transactions made at stores, ATMs, on the phone or online when you report the transactions promptly." SAC ¶ 26 (citing DAA[4] at 6).

- "Fraud Monitoring: We use sophisticated Fraud Monitoring tools to review how and where your card is being used. These tools enable us to contact you if we detect abnormal patterns and to block potentially fraudulent transactions." SAC ¶ 26 (citing DAA at 6).

_____

[4] Page numbers referenced from the DAA refer to the page number of the DAA itself rather than the page number automatically populated by the CM/ECF filing system.

- "We will maintain appropriate records of your Account.  An Account statement for checking and savings accounts will be sent to you at your current address . . . ." SAC ¶ 27 (citing DAA at 12).

- "Telephone Requests:  You agree that funds in any of your Accounts with us can be transferred, upon the telephone request of any signer on the Account, to another account with us or to any other financial institution."  SAC ¶ 28 (citing DAA at 16-17).

- "We may change the terms of this Agreement, including any fees or features of your Account, upon notice sent to you via ordinary U.S. mail at least 30 calendar days prior to the effective date of the change; provided however, for automatically renewable CDs, no such change shall be effective prior to the renewal date, and such notice may be provided with ten days written notice prior to the renewal date." SAC ¶ 29 (citing DAA at 18).

- "Your Account is governed by all rules and regulations of applicable federal law and the laws of your State (to the extent they are not considered to have been preempted by federal law), including those that may modify the terms of this Agreement." SAC ¶ 30 (citing DAA at 18).

- "You will receive an account statement each month for your accounts that are accessible by electronic funds transfers if such transfers occur during the month, but at least quarterly if no such transfers occur."  SAC ¶ 31 (citing DAA at 24).

- "In Case of Errors or Questions About Your Electronic Funds Transfers . . . We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the problem or error appeared."  SAC ¶ 32 (citing DAA at 24).

- "We will advise you of the results of our investigation within 10 days . . . after we hear from you and, if we have made an error, we will correct it promptly." SAC ¶ 33 (citing DAA at 24).

Plaintiff contends that Defendant refused to refund Plaintiff's stolen money in breach of the DAA. SAC ¶ 37. As a result, Plaintiff claims that he has suffered damages of $88,100.00 plus interest. *Id.*

"The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff[.]" *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010) (internal citations omitted). The parties do not dispute that the DAA is a binding contract between Chase and Plaintiff governing their relationship. Rather, Defendant sets forth three key arguments in its Motion to Dismiss as to why Defendant's breach of contract claim fails. First, Defendant argues that Plaintiff "failed to comply with the prerequisites of the [DAA] terms," requiring that he report the purported unauthorized transactions within 60 days of the date a statement disclosing an error was made available to the Plaintiff, as required in the DAA. Mot. at 6, 9-11. Second, Defendant argues that Plaintiff failed to notify Chase that he did not receive statements within the designated 30-day timeframe prescribed in the DAA. *Id.* at 11. And third, Defendant claims that Plaintiff's allegation that Chase failed to "safeguard the money deposited into plaintiff's account" fails as a matter of law. *Id.* The Court will address each argument in turn.

### 1. *60-Day Reporting Requirement for Unauthorized Transactions*

The terms of the DAA state that, in case of errors or questions about a customer's electronic funds transfers, Chase "must hear from you NO LATER than 60 days after [Chase] sent you the FIRST statement on which the problem or error appeared." DAA at 29. Defendant argues that this provision required Plaintiff to notify Chase within 60 days of Chase transmitting and making available the statement on which the first alleged unauthorized transfer appeared. Mot. at 10. Thus, because Plaintiff failed to report the allegedly unauthorized transactions within this 60-day window, Defendant contends that

Chase was not required to conduct an investigation or refund the allegedly unauthorized funds. *Id.* Plaintiff, however, counters by arguing the 60-day deadline does not apply because Chase never sent *to Plaintiff* any bank statements reflecting the unauthorized transactions. Opp'n at 6. In any event, Plaintiff argues that the DAA permits the 60-day deadline to be extended so long as Plaintiff can demonstrate a "good reason." *Id.* at 6.

According to Plaintiff's own allegations the allegedly unauthorized transactions occurred between May 10, 2021 and June 21, 2021. SAC ¶ 15. But because the identity thief allegedly changed his mailing address, he did not discover the unauthorized transactions until nearly a year later on May 19, 2022 when he was notified that a check he wrote had insufficient funds. *Id.* ¶¶ 12, 17. Six days later, on May 25, 2022, Plaintiff reported a fraud claim to Chase seeking to have his money reimbursed. *Id.* ¶ 17. Thus, the question here is not whether Plaintiff reported the unauthorized transactions within 60 days after Chase transmitted the statements (he admittedly did not), but rather whether the DAA terms *required* Plaintiff, without having received the statements, to report the unauthorized transactions within that 60-day window.

Because the plain language of the DAA regarding the 60-day reporting window is ambiguous, the Court looks to the statutory intent and case law interpreting 15 U.S.C. § 1693 (the EFTA statute) containing similar language to guide its interpretation. The EFTA, 15 U.S.C. § 1693 *et seq.*, was enacted to address concerns related to electronic banking transactions, providing consumers protection from liability for unauthorized electronic fund transfers similar to the protections Congress had previously afforded consumers for unauthorized credit card charges. *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 580-81 (9th Cir. 2021). Similar to the language of the DAA here, 15 U.S.C. § 1693f(a) prescribes that a consumer must notify a financial institution of an error "within sixty days after having transmitted to a consumer documentation[.]" 15 U.S.C. § 1693f(a).

Courts interpreting the 60-day notice requirement are unclear as to whether the statute requires the financial institution to only *transmit* the documentation with the alleged error or whether the customer must also *receive* the documentation for the 60-day clock to

start.  *Compare Widjaja*, 21 F.4th at 582 ("the EFTA generally requires consumers to report an unauthorized withdrawal within 60 days after the bank **sends** a monthly statement reflecting the withdrawal") (emphasis added), *and In re Bank of Am. California Unemployment Benefits Litig.*, 2023 WL 3668535, at *5 (S.D. Cal. May 25, 2023) ("The EFTA requires consumers to report any alleged errors to a financial institution within 60 days of the date the institution **sends** the written documentation first reflecting the error.") (emphasis added), *with Overby v. Chase Manhattan Bank & J.P. Morgan Chase*, 351 F. Supp. 2d 219, 225 (S.D.N.Y. 2005) ("Under the [EFTA], plaintiff had a duty to notify Chase of any errors or unauthorized transactions within 60 days after **receiving** documentation of the electronic transfer) (emphasis added), *and Golden-Koether v. JPMorgan Chase Bank, N.A.*, 2011 WL 6002979, *2 (D.N.J. Nov. 29, 2011) ("the consumer must provide, within sixty days of **receiving** documentation such as an account statement, oral or written notice to a financial institution") (emphasis added), *and Gale v. Hyde Park Bank*, 2007 WL 541946, at *2 (N.D. Ill. Feb. 14, 2007) ("A bank customer must notify his or her bank that an account error exists within sixty days of **receiving** a bank statement or other notification.") (emphasis added).  In light of the EFTA's statutory intent—consumer protection—the Court deems it appropriate to apply the "receiving" rationale by these courts to the facts here.

Thus, the Court finds that Plaintiff states a plausible breach of contract claim with respect to the 60-day provision.  While it may prove to be true that Plaintiff, contrary to his allegations, failed to comply with his obligations under the DAA in such a way that he may not recover on a breach of contract, the Court is unable to make that determination at this stage of the proceedings.  Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with respect to the 60-day reporting requirement.

### 2. *30-Day Deadline to Report No Receipt of Account Statements*

Nevertheless, Defendant argues that under the DAA, Plaintiff had an obligation to notify Chase if he did not receive his scheduled account statement within 30 days, which Plaintiff failed to do.  Mot. at 11.  The Court turns to the relevant provision in the DAA,

specific to notification of errors, forgeries, and unauthorized signatures, which states the following:

> Failure to report an unauthorized item or error,[5] or that you did not receive your scheduled statement, within the 30-day time frame set forth above,[6] or to abide by the conditions set forth herein, shall be deemed conclusive proof that you failed to exercise reasonable care and promptness in examining the items and statements of the affected Account and in notifying us of the unauthorized item or error. You agree that such items and errors shall therefore be fully enforceable against you and you shall have no claim against us for [the] same and shall be barred from bringing any action against us that is in any way related to the unauthorized item or errors.
>
> Notwithstanding the foregoing, **the Electronic Funds Transfer Services section of this Agreement governs the reporting of errors on consumer electronic funds transfers** governed by Federal Reserve Board Regulation E.

DAA at 13 (emphasis added). While the Court recognizes that this section of the DAA conveys to Plaintiff an obligation to report if he did not receive a scheduled account statement, this section explicitly states that the "Electronic Funds Transfer Services section" of the DAA governs the reporting of errors at issue here. Indeed, Plaintiff's allegations include unauthorized transfers from ATM withdrawals, Zelle payments, and card purchases (SAC ¶ 15), all of which are considered "Electronic Funds Transfer Services" under the DAA. *See* DAA at 27 (defining electronic funds transfer services to include "all transfers resulting from debit cards, ATM Cards, electronic payments, credits and transfers, telephone transfers and on-line banking transactions").

---

[5] The DAA defines "unauthorized item" as "a check or other item drawn on or posted to your Account that is altered in any way or was not drawn or otherwise authorized by you[.]" DAA at 18.

[6] The 30-day time frame states that "[Y]ou agree to notify us in writing of such unauthorized item or error within 30 days of the date on which the unauthorized item or error within 30 days of the date on which the unauthorized item, or the Account statement that contained a description of the unauthorized item or error, was mailed, transmitted or otherwise made available to you." DAA at 18.

Further, the clause barring a customer's recovery for an unauthorized item or error after only 30 days for failure to report a missing statement is at odds with the clause permitting 60 days to report an electronic funds transfer error.  Under California law, to the extent the clauses may be read to conflict with each other, "it is the duty of the court to reconcile the conflicting clauses so as to give effect to the whole of the instrument, if that is possible within the framework of the general intent or predominant purpose of the instrument." *In re Marriage of Williams*, 105 Cal. Rptr. 406, 412 (Ct. App. 1972); *see also* Cal. Civ. Code § 1652 ("Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general intent and purpose of the whole contract.").  For this additional reason, the Court finds that the 30-day requirement to report a missing statement does not apply to the electronic funds transfers at issue here.  Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with respect to the 30-day window to report a missing account statement.[7]

### 3. *Chase's Alleged Failure to Safeguard Plaintiff's Money*

Finally, Defendant argues Plaintiff's allegation that Chase breached the DAA because Chase failed to safeguard his money deposited into his account fails as a matter of law.  Mot. at 11.  Defendant contends that Plaintiff fails to cite to any specific provision from the contract obligating Chase to monitor his account given that no clause exists and, in any event, the contractual relationship between Plaintiff and Chase includes no duty to supervise the account.  The Court agrees with Defendant.

While the DAA outlines general precautions that Chase takes to "[s]afeguard information about [the customer]," (DAA at 33), nowhere does the DAA directly state that

---

[7] The Court recognizes that Defendant's Motion focuses on two key provisions in the DAA (the 60-day EFTA error reporting timeframe and the 30-day reporting timeframe for a missing account statement).  Accordingly, the Court will not address the other contractual provisions that Plaintiff claims Defendant breached at this juncture.

it will safeguard a customer's money.  To the contrary, the DAA cautions customers themselves to safeguard their account information by protecting their own "account statements[,] IDs and passwords[,] debit cards and PINs[,] checks[,] signature stamps[,] any other bank-related documents[.]"  DAA at 7-8.  Further, as discussed in the Court's prior order granting Defendant's Motion to Dismiss Plaintiff's FAC, banks have no duty to monitor or "police" its customer's accounts.  *Hawkins v. Bank of Am., N.A.*, 2018 WL 1316160, at \*2 (S.D. Cal. Mar. 14, 2018) (citing *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998)).  Thus, the Court **GRANTS** Defendant's Motion to Dismiss only with respect to the above allegation and finds that Plaintiff's breach of contract claim regarding Defendant's alleged failure to safeguard Plaintiff's money fails.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant's Request for Judicial Notice is **DENIED as moot**; and

2.  Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

DATED: December 19, 2024

_____

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

3:22-cv-01773-JAH-DEB